UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MINERVA GABRIEL,

    Plaintiff,

vs.                                                        Case No. 3:07-cv-1076-J-33MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on October 15, 2004. (Tr. 13, 187). The Social Security Administration ("SSA") denied this application initially and on reconsideration. Id. Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on November 29, 2006. (Tr. 13, 22-25, 42, 179, 480). On May 3, 2007, the ALJ issued a decision denying Plaintiff's claim. (Tr. 10-21). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 13, 2007. (Tr. 5-7). Having exhausted all administrative

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14).

remedies, Plaintiff filed this case seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g) and § 1383 (c)(3).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since March, 23, 2000, due to a back injury from domestic violence. (Tr. 104, 126). She contends her injury causes severe pain in her upper and lower back, neck, shoulders, legs, and arms. Id. Plaintiff also claims her pain results from muscle spasms, asthma attacks, migraine headaches, and general head trauma from a mild head concussion (Tr. 169, 183-84).

### B. Summary of Evidence Before the ALJ

Plaintiff was 39 years of age on the date the ALJ issued his decision following a hearing on November 29, 2006 in Jacksonville, Florida. (Tr. 10, 483). At the hearing, Plaintiff testified she had completed high school and one year of college. (Tr. 483). She also stated she worked various jobs over the years, such as a cashier, a secretary, and a customer service agent. (Tr. 484-87). Plaintiff asserts she became disabled on March 23, 2000 due to pain and difficulty resulting from migraine headaches, muscle spasms in her back and neck, and asthma attacks. (Tr. 487-96). She also claims she has difficulty concentrating and has limitations in seeing, hearing, and speaking clearly. (490-91, 498-99).

In his decision, the ALJ provided a detailed account of Plaintiff's medical records. As this appeal deals only with Plaintiff's mental impairments, the Court will limit its discussion to the medical evidence regarding Plaintiff's mental impairments. On

February 12, 2002, Dr. Stephen Bloomfield performed a psychological evaluation on Plaintiff at the request of the Department of Children and Families. (Tr. 253). He suggested Plaintiff attend individual psychotherapy and parenting classes. (Tr. 256). Dr. Bloomfield noted Plaintiff's responses indicated elevations in defensiveness and, in his opinion, this indicated therapy would be helpful. (Tr. 255). He also explained he would want to rule out a Conversion Disorder, a Personality Disorder mixed with narcissistic and paranoid features, and an Adjustment Disorder. (Tr. 256).

In a letter dated May 9, 2002 addressed to the Department of Children and Families, Dr. Serena Bloomfield expressed her concern for Plaintiff following an individual psychotherapy appointment on April 18, 2002. (Tr. 264). Dr. Bloomfield explained how Plaintiff had failed to show up or call for her most recently scheduled appointment. Id. Dr. Bloomfield opined Plaintiff was not capable of caring for her child and needed psychiatric intervention and proper medication. Id. Plaintiff had been Baker Acted and Dr. Bloomfield indicated that during the April 18, 2002 appointment, Plaintiff had rambled and explained she had a problem with short-term memory. Id. Dr. Bloomfield also stated Plaintiff appeared unable to carry on a sequential conversation. Id.

Dr. John Kalam examined Plaintiff on December 13, 2002. (Tr. 265-67). He found no mental impairments upon examination and noted Plaintiff's mood was not sad, her affect was appropriate, she was able to follow directions without difficulty and express herself clearly, and there were no apparent lapses in her concentration. (Tr. 267).

Dr. Randi Most, a neuropsychologist, performed a psychological evaluation on

Plaintiff on January 29, 2003. (Tr. 276-278). Dr. Most noted Plaintiff clearly had a history of psychiatric problems and her "affect [was] abnormal and her mental status [was] somewhat off." (Tr. 278). However, Dr. Most explained it was impossible to determine Plaintiff's diagnoses without more information contained in her medical records from the Mental Health Resource Center ("MHRC") where Plaintiff spent 28 days. (Tr. 278).

A Psychiatric Review Technique Form ("PRTF") was completed by Dr. James LeVasseur on March 2, 2003. (Tr. 280-293). Dr. LeVasseur concluded Plaintiff had a Personality Disorder and had mild limitations in maintaining social functioning, concentration, persistence, and/or pace. (Tr. 287, 290). However, he further explained Plaintiff was able to understand and remember instructions, complete tasks with adequate persistence and pace, work a regular schedule, concentrate, and act socially appropriate and cooperative. (Tr. 292).

On April 12, 2005, Dr. Lauren Lucas performed a personality assessment. (Tr. 397-99). Dr. Lucas noted Plaintiff paid attention adequately during their interview and mental status testing. She also opined Plaintiff was psychologically competent to perform a routine task and to appreciate the need for appropriate relations among co-workers and supervisors.

Just one week later on April 19, 2005, Dr. Mark Williams completed a Mental Residual Functional Capacity ("MRFC") evaluation. (Tr. 401-04). Dr. Williams indicated Plaintiff was moderately limited in her ability to interact appropriately with the public and to accept instruction and criticism from supervisors. (Tr. 402). He also opined Plaintiff experienced moderate limitations in her ability to set realistic goals or make plans

independently of others. Id. However, Dr. Williams concluded that overall, Plaintiff could work with the public and co-workers in a casual setting and could accept non-threatening supervision. (Tr. 403). Dr. Williams also completed a PRTF on April 19, 2005. (Tr. 405-18). He indicated Plaintiff had a Personal Disorder and opined Plaintiff had mild limitations with respect to daily living activities and maintaining concentration, persistence, and/or pace. (Tr. 412, 415).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920(a)(4). First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 416.920(a)(4)(v).

Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff had not been under a disability within the meaning of the Social Security Act since October 15, 2004, the date the application was filed. (Tr. 13). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, March 23, 2000. (Tr. 15). At step two, the ALJ found Plaintiff had the following severe impairments: muscoskeletal pain, personality disorder, eye problems, diffused myalgias with history of multiple episodes of trauma over the previous two years with no trigger points identified, a history of migraine headaches, and a history of allergic sinusitis. Id. At step three, the ALJ determined Plaintiff did not have an impairment, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4. Id.

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform unskilled work.[2] Id. Specifically, the ALJ found Plaintiff was able to:

> Lift and carry no more than 20 pounds occasionally, ten pounds frequently; sit, stand, and walk eight hours each during the completion of an eight-hour workday; occasionally bending, stooping, crawling, crouching, kneeling, climbing stairs; no working around hazards such as machinery; no concentrated exposure to pollutants such as dust, fumes, or extreme temperatures or humidity.

Id. In making this determination, the ALJ stated he considered all symptoms and the

---

[2] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. § 416.968(a). It involves understanding, remembering, and carrying out simple instructions; making simple work-related decisions; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations. SSR 96-9p.

extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence. (Tr. 15). The ALJ also evaluated the intensity, persistence, or functionally limiting effects of Plaintiff's pain symptoms to determine the extent to which they limit her ability to do basic work activities. (Tr. 16). He concluded Plaintiff's impairments were capable of producing pain and limitations. (Tr. 19). However, he also concluded Plaintiff's allegations of the intensity, persistence, and functionally limiting effects of her symptoms were not supported by objective medical evidence or other evidence from the record. Id.

At step four, the ALJ utilized the testimony of a vocational expert ("V.E.") during the hearing to determine if Plaintiff could perform any of her past relevant work. (Tr. 506-11). The V.E. explained Plaintiff could not perform any of her past work. (Tr. 510). Accordingly, the ALJ proceeded to step five and asked the V.E. whether Plaintiff could perform other work existing in the national economy. Id. The V.E. testified Plaintiff could perform light, unskilled jobs, such as a cafeteria attendant, an office helper, and a ticket seller. Id. He also testified Plaintiff could perform a sedentary, unskilled job as a surveillance system monitor. (Tr. 511). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 21).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact

are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff argues one issue on appeal. Plaintiff asserts the ALJ incorrectly assessed the psychological medical evidence. (Doc. 12, p. 3). Specifically, Plaintiff directs the Court's attention to medical records from three doctors: Dr. Stephen Bloomfield, Dr. Serena Bloomfield, and Dr. Randi Most. (Doc. 12, p. 4-6).

### 1. Dr. Stephen Bloomfield

With respect to Dr. Stephen Bloomfield, Plaintiff claims the ALJ incorrectly interpreted Dr. Bloomfield's opinions. (Doc. 12, p. 4). The ALJ characterized Dr. Bloomfield's opinion as ruling out specific mental disorders. Id. Plaintiff argues these conditions, however, had not been ruled out and therefore, Dr. Bloomfield's opinions were mischaracterized. Id. The Commissioner responds that the ALJ's characterization of Dr. Bloomfield's opinion was nothing more than a typographical error that was at most harmless. (Doc. 13, pp. 7, 8). Furthermore, the Commissioner contends the pertinent issue in assessing Plaintiff's mental condition is not the specific diagnoses, but the limitations on her ability to work resulting from the diagnoses. Id.

On February 12, 2002, Dr. Stephen Bloomfield performed a psychological evaluation of Plaintiff and drafted a report. (Tr. 253-56). The section of the report to which Plaintiff draws this Court's attention states: "Diagnostically I would want to rule out a Conversion Disorder, a Personality Disorder mixed with narcissistic and paranoid features and an Adjustment Disorder." (Tr. 256). When the ALJ discussed Dr. Bloomfield's opinion, he stated: "Dr. Bloomfield noted that diagnostically ruled out conversation disorder, a personality disorder mixed with narcissistic and paranoid features, and an adjustment disorder." (Tr. 17). Plaintiff contends this discrepancy between what the ALJ claimed Dr. Bloomfield opined and what Dr. Bloomfield actually wrote in his opinion results in error. (Doc. 12, p. 4). This Court disagrees.

While it appears the ALJ did not accurately express Dr. Bloomfield's desire to rule out a conversion disorder, a personality disorder mixed with narcissistic and paranoid features, and an adjustment disorder; this inaccuracy does not mean he erred in his

Page 9

overall assessment of Plaintiff's mental impairments.  Indeed, Dr. Bloomfield's opinion does not contain any specific diagnoses.  A fair reading of Dr. Bloomfield's report reveals he would have liked to eventually rule out the specific disorders.  There is simply no indication from his report indicating a diagnosis was ever made.  Moreover, even if there had been a diagnosis, the report makes no mention of functional limitations and there is no evidence from Dr. Bloomfield that Plaintiff's mental condition or possible diagnoses in the future would prevent her from performing unskilled work.

In order for Plaintiff to establish disability, she must demonstrate she has a severe medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of more than 12 months.  C.F.R. § 416.907(a).  Furthermore, an impairment should be considered "not severe" only if "it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987).  As such, the pertinent issue in determining whether an individual is disabled is not any specific diagnosis, but rather, the limitations arising from the diagnosis.  See e.g. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."); Snyder v. Astrue, 2008 WL 4456456 *7 (M.D. Fla. 2008) ("In the absence of evidence of functional limitations attributable to a condition, a diagnosis of a condition is insufficient to support a finding of a severe impairment."); Sellers v. Barnhart, 246 F. Supp.2d 1201, 1211 (M.D. Ala. 2002) (explaining "diagnosis alone is an insufficient basis for a finding

that an impairment is severe" and "objective medical evidence must confirm that the impairment is severe"); see also Petition of Sullivan, 904 F.2d 826, 845 (3rd Cir. 1990) (holding a claimant must show not just diagnosis, but function limitations preventing performance of substantial gainful activity); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("A psychological disorder is not necessarily disabling. There must be a showing of related functional loss."). Accordingly, whether Dr. Stephen Bloomfield actually ruled out certain diagnoses or wanted to rule out certain diagnoses has no bearing in the ALJ's determination of Plaintiff's RFC or his ultimate finding regarding her disability status. Thus, the Court finds no reversible error in the ALJ's inaccurate description of Dr. Stephen Bloomfield's statements in his report.

### 2. Dr. Serena Bloomfield

Plaintiff also argues the ALJ erred in not mentioning the opinion of Dr. Serena Bloomfield contained in a letter she sent to the Department of Children and Families back in May of 2002. (Doc. 12, p. 5). Plaintiff claims Dr. Serena Bloomfield's opinion paints a starkly different picture than the one ultimately adopted by the ALJ. (Doc. 12, p. 5). While it is true the ALJ did not discuss the specific content of the letter, he did mention the letter and incorporate it into his decision. (Tr. 18). The ALJ stated:

> A [l]etter from Serena Lurie Bloomfield, Ed.D. dated May 9, 2002 indicates the physician was closing the claimant's case due to the claimant's failure to show up for scheduled appointments.

(Tr. 18). Plaintiff contends it is not enough for the ALJ to merely mention the letter and instead, the ALJ should have discussed the opinions concerning Plaintiff's mental health contained in it. (Doc. 12, p. 5).

Plaintiff is correct that the ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R. §§404.1520(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Specifically, the judge "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, the May 9, 2002, letter from Dr. Serena Bloomfield stated that Plaintiff had failed to appear for several appointments and when she did, Plaintiff "rambled, said she had a problem with short-term memory, and appeared not to be able to carry on a sequential conversation." (Tr. 264). The letter also referenced the fact that Plaintiff had been Baker Acted previously and Dr. Serena Bloomfield opined Plaintiff was not capable of caring for her child. Id. Although the ALJ did not specifically discuss these findings, as mentioned above, the ALJ referenced the letter and the Court concludes he properly considered it. Indeed, the ALJ's findings with respect to Plaintiff's mental condition is

consistent with the letter.  The ALJ found Plaintiff had moderate restrictions in her ability to maintain concentration, persistence, or pace.  (Tr. 18).  Dr. Serena Bloomfield's letter does not indicate any sort of limitations more than a limitation in the ability to maintain concentration and it certainly does not imply Plaintiff was incapable of performing the simple demand of unskilled work as the ALJ determined.  As such, Dr. Serena Bloomfield's letter was not significantly probative evidence and the ALJ did not err in failing to discuss all of the contents of the letter.

### 3. Dr. Randi Most

Finally, Plaintiff argues the ALJ erred in considering the opinion of Dr. Randi Most.  (Doc. 12, p. 6).  Specifically, Plaintiff contends the ALJ should have considered Dr. Most's opinion that Plaintiff clearly had a history of psychiatric problems and that her mental status was somewhat off.  (Doc. 12, p. 6).

On January 29, 2003, Dr. Randi Most conducted a psychological evaluation of Plaintiff.  (Tr. 276-79).  In the report, Dr. Most noted Plaintiff was cooperative and was "oriented to person, place, and time and was able to name the president."  (Tr. 277).  Plaintiff's "[a]ffect was flat" and her "speech was monotonic and, at times, digressive."  Id.  Plaintiff's behavior was appropriate, she did not have any tics, tremors or involuntary motor movements, nor did she display any hallucinations, delusions, or paranoia.  Id.  Plaintiff could only retain one out of three objects in five minutes and gave two incorrect responses.  (Tr. 277-78).  In her conclusions, Dr. Most noted Plaintiff "clearly ha[d] a history of psychiatric problems" and Plaintiff's "affect [was] abnormal and her mental status [was] somewhat off."  (Tr. 278).

The ALJ referred to Dr. Most's report. Indeed, he provided a rather detailed summary of Dr. Most's report. (Tr. 17). Plaintiff complains the ALJ did not specifically mention Dr. Most's statements that Plaintiff had a history of psychiatric problems, her affect was abnormal, and her mental status was "somewhat off." The Court finds the ALJ's failure to mention these specific statements by Dr. Most is not error. It is clear the ALJ considered Dr. Most's report. Much like Dr. Stephen Bloomfield's opinion, Dr. Most's opinion did not diagnose Plaintiff with a severe mental impairment or indicate any limitations which would prevent Plaintiff from performing the simple demands of unskilled work. (Tr. 276-78). Thus, the undersigned finds no error in the ALJ's treatment of Dr. Most's opinions.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence. Accordingly, the Clerk of the Court is directed to enter judgment **AFFIRMING** the Commissioner's decision and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  12th  day of January, 2009.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record